IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DISH NETWORK, L.L.C.,                      *

    Plaintiff,                                          *

v.                                                   *         Civil No. TDC-17-3817

DIMA FURNITURE INC., *et al.*,             *

    Defendants.                                  *

                                        *    *    *    *    *    *

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") (ECF No. 35) filed by Plaintiff DISH Network L.L.C. ("DISH") against Defendant Tareq Hasweh ("Hasweh"). Hasweh has not filed a response and the time for doing so has passed. *See* Loc. R. 105.2(a). On March 21, 2019, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6, Judge Chuang referred this case to me for a report and recommendation on DISH's Motion. (ECF No. 38.) I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that the DISH's Motion be granted.

**I.     FACTUAL AND PROCEDURAL HISTORY**

In DISH's First Amended Complaint (ECF No. 17), it sued Defendants Dima Furniture, Inc. ("Dima"), Mohammad Yusif ("Yusif"), and Hasweh, individually and collectively doing business as Spider-TV (collectively, the "Defendants"). In Count I, DISH brought a claim for Direct Copyright Infringement, in violation of 17 U.S.C. § 501, against Hasweh. In Count II, DISH brought a claim for Contributory Copyright Infringement, in violation of 17 U.S.C. § 501, against Dima and Yusif. On May 23, 2018, based upon the joint stipulation of DISH, Dima, and

Yusif, the Court entered a Final Judgment and Permanent Injunction awarding judgment to DISH on Count II of its First Amended Complaint against Dima and Yusif. (ECF No. 23.) Because of the Final Judgment and Permanent Injunction, DISH's only remaining claim in this case is the claim that it asserted against Hasweh.

Hasweh was personally served with the First Amended Complaint and summons (*see* ECF No. 28), but he did not file an answer or responsive pleading within the requisite time period.[1] On October 2, 2018, DISH moved for the Clerk's entry of default (ECF No. 31), and the Clerk entered default against Hasweh on October 10, 2018 (ECF No. 32.) Thereafter, DISH sought leave of Court to file a motion for default judgment against Hasweh, as required by the Case Management Order. (ECF No. 33.) The Court granted DISH leave to file its proposed motion (ECF No. 34), and on November 6, 2018, DISH filed the Motion. Hasweh has not responded.

## II.  LEGAL ANALYSIS

### A.  Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26,

---

[1] Fed. R. Civ. P. 4(f)(2) provides that an individual in a foreign country may be served by "delivering a copy of the summons and of the complaint to the individual personally," unless prohibited by the foreign country's law. Hasweh resides in Jordan and was served with the summons and First Amended Complaint by hand delivery. (ECF Nos. 28 & 31.) Jordan is not a party to The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *See Dep't of State*, Jordan Judicial Assistance Information, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Jordan.html (last visited April 16, 2019). Jordanian law allows for the service of process by hand delivery, as DISH arranged in this case. (*See* ECF No. 31 at 1.) I conclude that Hasweh was properly served under Rule 4(f)(2).

2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2). A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

## B. Liability

"To establish copyright infringement liability, a plaintiff must prove two elements: (1) ownership of the copyright; and (2) copying of original constituent elements by the defendant." *Malibu Media, LLC v. Redacted*, No. DKC-15-0750, 2016 WL 3668034, at *2 (D. Md. July 11, 2016) (citing 17 U.S.C. § 501(a) and *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "[T]he Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (noting that while copyright infringement is a strict liability tort, "it nonetheless requires conduct by a person who causes in some meaningful way an infringement").

The following facts are taken from the First Amended Complaint (ECF No. 17) and DISH's Memorandum in support of its Motion (ECF No. 35-1). DISH alleges that it is the "fourth largest pay-television provider in the United States." (ECF No. 17 ¶ 11.) It delivers copyrighted programming to its subscribers throughout the United States "by means of satellite delivery and over-the-top ("OTT") services whereby programming is delivered using a public Internet infrastructure." (*Id.*) DISH contracts for and purchases rights for the international channels that it distributes from networks and their agents, including MBC FZ LLC, International Media Distribution (Luxembourg) S.A.R.L., World Span Media Consulting, Inc., Peninsula Production Company, and Dream Media (collectively, the "Networks"). (*Id.* ¶ 12.) Among other channels, DISH distributes Arabic-language channels owned by the Networks, including Al Arabiya, Al Hayah 1, Al Jazeera Arabic News, Al Jazeera Mubasher, Al Nahar, Al Nahar Drama, Al Nahar Sport, ART Cinema, Dream 2, Future TV, Hekayat, Iqraa, LBC, LDC, MBC1, MBC Drama, MBC Kids (a/k/a MBC3), MBC Masr, Murr TV (a/k/a MTV Lebanon),

NBN, New TV (a/k/a Al Jadeed), Noursat, ONTV, and OTV (collectively, the "Protected Channels"). (*Id.*) The Networks own the copyrights for the works that air on their respective channels. (*Id.*)

DISH entered into contracts with the Networks for "the exclusive right to distribute and publicly perform the works that air on the Protected Channels in the United States by means including satellite, OTT, Internet protocol television ('IPTV'), and Internet." (*Id.* ¶ 13.) In addition to the unregistered copyrighted works that aired on the Protected Channels during the relevant times, at least eight works that aired on the Protected Channels are registered with the United States Copyright Office. (*Id.*)

During all relevant times, Defendants owned and operated a streaming television service called Spider-TV (the "Service"). (*Id.* ¶ 14.) Hasweh established the Service and continues to own and control it, as well as the computer servers that retransmit the Protected Channels, and the Service's website. (*Id.* ¶ 15.) Hasweh arranged for set-top boxes for the Service to be shipped to the United States and sought out vendors to distribute the set-top boxes for him within the United States. (*Id.*) Yusif, the founder of Dima, advertised, sold, and distributed set-top boxes and service plans for the Service in the United States. (*Id.* ¶ 16.) Yusif registered "Spider-TV" as a trade name of Dima with Maryland's Department of Assessments and Taxation Charter Division on July 8, 2015.

Defendants use the Service to unlawfully retransmit DISH's Protected Channels to customers of Spider-TV in the United States. To do so, Hasweh captures live broadcast signals of the Protected Channels and transmits the Protected Channels to Spider-TV users in the United States through OTT delivery. (*Id.* ¶ 18.) Hasweh has advertised his service on Facebook and on the official website for the Service, located at www.spider-tv.com. (*Id.* ¶¶ 19-21.) Users of the

Service may view the Protected Channels by purchasing a set-top box on the Service's website for $199, which includes 13 months of access to the Service. (*Id.* 23.) Defendants also sell service plan extensions. (*Id.* ¶ 24.)

Defendants have actual knowledge that their retransmission of the Protected Channels through the Service infringes the copyrights that DISH acquired through its contracts with the Networks. (*Id.* ¶ 27.) DISH and the Networks sent at least 32 notices of infringement to the Defendants in 2017, demanding that the Defendants cease the retransmission of the Protected Channels. (*Id.* ¶ 27.) Defendants did not respond to the notices of infringement or cease violating DISH's copyrights as requested. (*Id.*) DISH also sent at least 33 notices of infringement to the Internet service providers associated with the service in 2017. (*Id.* ¶ 28.) At least some of the notices were forwarded to the Defendants. (*Id.*) Rather than complying with DISH's requests, the Defendants interfered with the efforts of the Internet service providers to remove the unauthorized content by transmitting the Protected Channels from different locations. (*Id.*)

### 1. Ownership of Valid Copyright

The works shown on the Protected Cannels were authored and first published in the United Arab Emirates, Qatar, Egypt, and Lebanon, which are all parties to copyright treaties with the United States.[2] (*Id.* ¶ 31.) These works are therefore subject to the protections afforded by the Copyright Act pursuant to 17 U.S.C. 104(b)(2).[3] By its agreements with the Networks, DISH held the exclusive right to distribute and publicly perform the works shown on the Protected Channels at all relevant times. *See* 17 U.S.C. §§ 201(d), 204(a) (authorizing transfer of rights

---

[2] Specifically, the United Arab Emirates, Qatar, Egypt, and Lebanon are parties to the Berne Convention for the Protection of Literary and Artistic works, rendering them "treaty parties" under 17 U.S.C. § 104(b). (ECF No. 35-1 at 6.)

[3] In addition, "eight of DISH's copyrighted works are registered with the United States Copyright Office, which creates a presumption as to ownership and validity." (ECF No. 35-1 at 7.)

protected under the Copyright Act by signed, written agreement). As the exclusive licensee, DISH is permitted to sue for Hasweh's infringement of its rights under the Copyright Act. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."). Accepting the allegations in DISH's First Amended Complaint as true, DISH has established that it held the exclusive right to distribute and publicly perform the works shown on the Protected Channels in the United States at all relevant times, and that it therefore holds the copyrights in the protected works.

### 2. Infringement

Hasweh violated DISH's exclusive rights under 17 U.S.C. § 106 by distributing and performing the copyrighted programs that air on the Protected Channels in the United States through use of the Service. (ECF No. 17 ¶ 32.) DISH has not authorized Hasweh to distribute or publicly perform the protected works. (*Id.*) Hasweh's distribution and performance of the copyrighted programs render him a direct infringer of DISH's copyrights pursuant to 17 U.S.C. 501 ("Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author."). Accepting the allegations in DISH's First Amended Complaint as true, DISH has established that Hasweh infringed its copyrights in works airing on the Protected Channels.

DISH has established that it owned valid copyrights and that Hasweh directly infringed on these copyrights by distributing the Protected Works without authorization. DISH has therefore established Hasweh's liability for direct copyright infringement under Count I of its First Amended Complaint.

## C. Damages

Having determined that DISH has established Hasweh's liability, it is now appropriate to determine the damages to which DISH is entitled. The damages that DISH seeks in its Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010). Here, DISH has provided sufficient evidence to support its claim for damages in the amount of $1,200,000.

Under the Copyright Act, a copyright owner may recover two types of damages from an infringer: "(1) the copyright owner's actual damages and any additional profits of the infringer. . .; or (2) statutory damages." 17 U.S.C. § 504(a). In this case, DISH has elected to seek statutory damages for the eight registered, copyrighted works described in the First Amended Complaint ("Registered Works") (*see* ECF Nos. 17 ¶ 12-3; 35-2 at 5-6, 259-76).[4] Because the eight works were registered within three months of their first publication, the registrations are timely under 17 U.S.C. § 412(2), and statutory damages are available to DISH.

Accepting the allegations of the First Amended Complaint as true, Hasweh is deemed to have infringed DISH's copyrights in the Registered Works by his default. Nonetheless, DISH presents additional evidence of Hasweh's infringement of its copyrights in the Registered Works. (*See* ECF No. 35-1 at 9-10.) In support of its Motion, DISH submitted the Declaration of Gregory Duval (ECF No. 35-2 at 405-10). Mr. Duval is the Chief Operating Officer of NagraStar, LLC ("Nagra"). (*Id.* ¶ 1.) DISH hired Nagra to analyze whether the Protected Channels were aired on the Spider-TV Service. (*Id.*) Nagra began monitoring the Spider-TV

---

[4] DISH does not seek an award of damages in connection with Hasweh's infringement of DISH's copyrights in the unregistered works. (ECF No. 35-1 at 9.) This is because DISH would be limited to actual damages and the disgorgement of the infringer's profits, both of which are "difficult to quantify." (*Id.* at 9-10.)

Service on January 19, 2017, and continues to monitor the Service. (*Id.*) Nagra purchased set-top boxes required to use the Spider-TV Service and used an Internet Protocol address associated with the United States to access and monitor the Spider-TV Service. (*Id.* ¶ 4.) A summary of Nagra's monitoring results is included in Mr. Duval's declaration. The summary indicates that the Protected Channels were observed to have been routinely broadcast on Spider-TV by Nagra. (*Id.* ¶ 5.) In addition, a comparison of the dates of publication of the Registered Works with the dates that the Protected Channels were observed by Nagra on the Spider-TV Service indicates that Hasweh transmitted the Registered Works on the Service.[5] Based on Hasweh's failure to respond to the allegations in the First Amended Complaint, as well as DISH's evidence that Hasweh transmitted the Registered Works on the Service, the Court finds that DISH is entitled to statutory damages for Hasweh's infringement of DISH's copyrights in the Registered Works.

Under the Copyright Act, a copyright owner may recover an award of statutory damages between $750 and $30,000 for all infringements related to each work. 17 U.S.C. § 504(c)(1). If the copyright owner proves that the infringement was committed willfully, a court has discretion to "increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). The Court may conclude that infringement was willful from evidence indicating a defendant received notice that a work was protected. *See Superior Form Builders. Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996); *see also Lyons P'Ship v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001). Courts consider several factors in calculating a statutory award for willful copyright infringement, including:

---

[5] Mr. Duval's declaration and the exhibits attached thereto do not state that Nagra observed the Registered Works being broadcast on the Spider-TV Service. Nonetheless, DISH has submitted sufficient evidence for the Court to conclude that the Registered Works were distributed and performed on Hasweh's Service. This is because Nagra observed the Protected Channels being broadcast on the Spider-TV Service on the same dates that the Registered Works aired on the Protected Channels. (ECF No. 35-2 at 405-10.)

> (1) the defendant's history of copyright infringement; (2) deterrence against future violations of copyright infringement; (3) the defendant's purpose and intent; and (4) the attitude and conduct of the parties.

*Spanski Enterprises, Inc. v. Telewizja Polska S.A.*, No. 12-CV-957 (TSC), 2017 WL 598465, at *1 (D.D.C. Feb. 14, 2017) (internal citations omitted), *aff'd*, 883 F.3d 904 (D.C. Cir. 2018). *See also Superior Form Builders*, 74 F.3d at 496-98 (upholding a jury's award of maximum statutory damages for willful infringement under the Copyright Act where the infringer had been sued multiple times for copyright infringement and had become the largest supplier in his industry by engaging in a "course of business" of copyright infringement). Courts have wide discretion in determining the appropriate statutory damages award. *See Lyons P'ship, L.P.*, 243 F.3d at 799 ("While we review for clear error any factual finding that would determine the appropriate level of statutory damages, we would review an award of those damages within the statutory range for abuse of discretion.").

DISH seeks statutory damages of $150,000 for each of the eight Registered Works that were infringed. (ECF No. 35-1 at 11.) In support of its argument that Hasweh's infringement was willful, DISH notes that Hasweh "was provided 32 notices demanding that he cease transmitting the Protected Channels" during 2017. (*Id.*) In addition, when Internet service providers associated with the Service were served with an additional 45 notices and removed the Protected Channels from the Service, Hasweh transmitted the Protected Channels from different locations. This allowed him to continue his infringement of DISH's copyrights. Finally, Hasweh continued transmitting the Protected Channels even after he was served with the complaint in this case. DISH also states that Hasweh continues to transmit the Protected Channels up to the time that its Motion was filed.

In addition to the willfulness of Hasweh's infringement, DISH points to other factors in support of its request for the maximum statutory damages award. (ECF No. 35-1 at 12.) DISH argues that because Hasweh's Service has distributed the Protected Channels on a "24 hour per day, 7 day per week basis," for nearly two years as of the time that DISH's Motion was filed, it is likely that the Service is "highly profitable." *Id.* This is especially so, DISH argues, because Hasweh does not pay licensing fees. DISH also notes that Hasweh's infringement caused it to "suffer lost subscription revenues, lost market share, and price erosion." (*Id.*) Each consumer who purchases access to the Protected Channels from the Service rather than DISH contributes to a depletion of DISH's revenues.

DISH acknowledges the difficulty in quantifying the profits that the Service has wrongfully generated and the profits that DISH has lost out on. At the same time, it argues that Hasweh "should not be rewarded for his failure to defend this case, which is effectively precluding any attempt at calculating actual damages and profits." (*Id.* at 13.) DISH cites to numerous cases in which other courts have found the maximum statutory damages award to be appropriate under similar circumstances. (*Id.* at 13-14.)

I find that DISH is entitled to the maximum statutory damages award, which amounts to a total of $1,200,000 ($150,000 for each of the eight Registered Works). Several factors weigh in favor of awarding the maximum statutory damages to DISH. First, Hasweh was notified on dozens of occasions that his Service was infringing upon DISH's copyrights. Yet he continued his infringing conduct, and even took steps to obstruct the efforts of his Internet service providers from limiting his ability to continue to unlawfully distribute the Registered Works on the Protected Channels. Second, Hasweh personally profited from his infringement. Users of his Service were required to pay a fee, and the Court presumes that at least some of the collected

fees went to Hasweh. The business model of Hasweh's Service depends on copyright infringement, and any profits that the Service has generated are owed to infringing activity. Third, although DISH only seeks statutory damages for the eight Registered Works, Hasweh's infringing conduct extends far beyond the scope of these works. (*See* ECF No. 35-2 at 409 (noting that Nagra "identified at least 515 separate instances of the Protected Channels being transmitted on the Spider-TV service between January 2017 and October 2018").) Fourth, there is a need for deterrence against future potential copyright infringers. DISH's Motion mentions numerous instances where its copyrights have been infringed under similar circumstances. Because of the ability of copyright infringers to profit from their conduct, a damages award far exceeding any potential profit is necessary to deter them from engaging in such conduct.[6] *See MTI Enterprises Inc. v. Theaterpalooza Cmty. Theater Prods., Inc.*, No. 18-650, 2018 WL 6928927, at *5 (E.D. Va. Dec. 7, 2018) (imposing maximum statutory damages for the willful infringement of copyrights where defendant continued to infringe plaintiffs' copyrighted works even after receiving notices of infringement), *report and recommendation adopted*, No. 18-650, 2019 WL 99267 (E.D. Va. Jan. 3, 2019); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511-12 (E.D. Va. 2003) (awarding maximum statutory damages because "[s]tatutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct"); *Gmbh v. Ilnitskiy*, No. 17- 415, 2018 WL 1882823, at *7 (E.D. Va. Jan. 25, 2018) (noting that a "maximum statutory damages award best serves the goal to both

---

[6] DISH argues that it is entitled to the maximum statutory damages, in part, because Hasweh's default has "effectively preclude[ed] any attempt at calculating actual damages and profits." (ECF No. 35-1 at 13.) I do not find that this factor is relevant in assessing whether DISH is entitled to the maximum statutory damages. Under DISH's argument, every defendant who defaulted in a copyright infringement case would be liable for the maximum statutory damages just because of their default. This could lead to plaintiffs receiving unjust windfalls and defendants being found liable for damages that do not bear a reasonable relationship to their conduct. *See Superior Form Builders*, 74 F.3d at 496.

repair Plaintiff's injury, the true extent of which his unknown, and to discourage future willful copyright-infringing conduct by Defendant and other potential infringers"), *report and recommendation adopted sub nom. Montblanc-Simplo GmbH v. Ilnitsky*, No. 17-415, 2018 WL 844401 (E.D. Va. Feb. 13, 2018); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 107, 1091-92 (D. Md. 1995) (imposing the "maximum penalty authorized by the statute" because the defendants' copyright infringement was "intentional, knowing and willful").

### D. Permanent Injunction

The Copyright Act authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Court may grant a permanent injunction where the plaintiff demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). I conclude that a permanent injunction is appropriate in this case.

DISH argues that it has been irreparably harmed by Hasweh's infringing activity. It points to its loss of subscribers and the damage done to its business reputation and goodwill. (ECF No. 35-1 at 15.) DISH notes that while it unquestionably loses subscribers to Hasweh's lower-cost Service, it cannot easily determine the amount of its lost revenues to quantify the harm. DISH also points out that the Service is "plagued by interruption or downtime and poor picture quality" (ECF No. 35-1 at 15), which reflects poorly on DISH because its programming is associated with the Service. Subscribers to the Service might assume that because the quality of the programming distributed through the Service is lacking, the same is true of quality of the

programming when it is distributed through DISH. I agree with DISH's arguments and find that DISH has been irreparably harmed by Hasweh's infringing activity. Absent a permanent injunction, DISH is likely to continue to be harmed in the future.

DISH argues that other remedies besides a permanent injunction, such as monetary damages, are not adequate to compensate for the harm that Hasweh's Service does to DISH. Considering the substantial statutory damages that I recommend be awarded to DISH, it is likely that Hasweh will be unable to compensate DISH for its current and future monetary damages. A permanent injunction is the only adequate remedy because it will require that Hasweh's Service cease its infringing activity, which will at the very least prevent DISH from suffering additional harm (and monetary damages) for which it might not be compensated. I find that DISH has established that other available remedies besides a permanent injunction are inadequate.

The balance of hardships also weighs in favor of awarding a permanent injunction to DISH. Because of Hasweh's infringing conduct, DISH has suffered lost revenues and damage to its goodwill, and it will continue to suffer these losses in the future unless a permanent injunction issues. These are significant hardships. The only hardship that Hasweh stands to endure is the harm that will come to his business when it is ordered to cease violating DISH's copyrights. But the harm that a business will suffer if it is required to cease violating the Copyright Act is not entitled to any weight in the balancing of hardships. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983).

For the same reasons, the public interest favors a permanent injunction. The public has an interest in the effectuation of the policy and purpose of the Copyright Act, which is to protect intellectual property rights and incentivize the creation of copyrightable works. *See Kidsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986-87 (2016); *Fogerty v. Fantasy Inc.*, 510 U.S.

517, 527 (1994). The issuance of a permanent injunction would further this interest. Conversely, the public has no legitimate interest in the continued operation of Hasweh's Service. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) ("The public interest in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works.").

In addition to enjoining Hasweh from continuing to infringe DISH's copyrights, DISH also seeks to enjoin certain nonparties from providing services to Hasweh that enable his infringing conduct.[7] Rule 65(d) governs the scope of permanent injunctions and provides that injunctions bind

> only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2).

"In shaping equity decrees, the trial court is vested with broad discretionary power. . . . [E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). Nonetheless, an injunction must be "tailored to restrain no more than what is reasonably required to accomplish its ends." *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, 442 F.2d 1261, 1267 (4th Cir. 1971). Here, an injunction binding the nonparties identified in DISH's motion is necessary, fair, and workable.

---

[7] On May 1, 2019, the Court ordered DISH to supplement its Motion with (1) information about whether the nonparties had received notice of DISH's Motion and request for an injunction that will bind them, and (2) argument regarding why the nonparties are "in active concert or participation" with the defendants, such that they may be bound by an injunction under Rule 65(d). (ECF No. 39.) DISH complied with the Court's order and filed its supplement at ECF No. 41.

### 1. Nonparty Internet Service Providers

DISH requests that the Court order certain nonparty Internet service providers (OVH SAS, OVH GmbH, and OVH Hosting Inc., collectively "OVH") to disable the computer servers that Hasweh's Service uses to unlawfully transmit the Protected Channels. (ECF Nos. 35-1 at 17; 41 at 3.) DISH states that Hasweh will be at least temporarily prevented from distributing the Protected Channels through the Service if these servers are disabled.[8] Other courts have ordered similarly situated nonparties to cease providing services that support the efforts of defendants to engage in infringing activity in violation of the Copyright Act. (*See* ECF Nos. 35-2 at 360; 41 at 2-3.)

I find that OVH has received actual notice of the injunction that DISH requests. DISH provided notice to OVH of its request for an injunction requiring it to stop providing certain services to Hasweh, which support infringing activities. (*See* ECF No. 41-1.) In addition, although OVH has received notice of DISH's Motion and proposed injunction, it has not notified DISH or the Court of any objection.

I further find that OVH may properly be enjoined because of its "active concert or participation" with Hasweh's infringing conduct. *See* Fed. R. Civ. P. 65(d)(2)(C); *see also TVB Holdings (USA), Inc. v. HTV Int'l Ltd.*, No. 16-1489, 2018 WL 7076022, at *8 (E.D.N.Y. Mar. 9, 2018) (recommending that the court order nonparty "internet service providers and content hosting websites to cease providing hosting services to [the defendant] in relation to its infringement"), *report and recommendation adopted,* No. 16-1489 (E.D.N.Y. Mar. 30, 2018).

---

[8] Previously, DISH requested that the Court enter an injunction specifically identifying Facebook, Inc. and directing it to remove certain content from its website. DISH now reports that "Facebook has since removed Defendant's offending pages, and therefore DISH no longer seeks to have Facebook specifically identified as a nonparty bound by the injunction." (ECF No. 41 at 2 n.1.)

Hasweh's infringing conduct depends on the Service being able to use OVH's computer servers to transmit the Protected Channels.[9] Without access to OVH's servers, Hasweh's infringing activities will be hindered. Because OVH has received notice of DISH's request for an injunction that binds OVH and has not objected to the request, and because OVH is in "active concert or participation" with Hasweh's infringing conduct, I recommend that OVH be ordered to disable the computer services under their control that are used by Hasweh's Service, as specified in DISH's proposed injunction (ECF No. 41-3).[10]

### 2. Domain Transfers

DISH states that Hasweh "promotes Spider-TV set-top boxes at Spider-tv.com and Spideriptv.com." (ECF No. 35-1 at 19.) In addition, several domains (including Ipmmss.com, Ipmsactive.com, Tigeriptv.com, and Royaliptv.com) "are used for software updates and in the course of transmitting the Protected Channels." (*Id.*) VeriSign, Inc.[11] ("VeriSign") is the registry for the following domains: Spider-tv.com, Spideriptv.com, Ipmmss.com, Ipmsactive.com, Tigeriptv.com, and Royaliptv.com. (ECF No. 41 at 4.) GoDaddy.com is the registrar for the following domains: Spider-tv.com, Spideriptv.com, Ipmmss.com, Tigeriptv.com, and Royaliptv.com. (*Id.*) Name.com is the registrar for the Ipmsactive.com domain. (*Id.*) Hasweh's Service uses these domains to promote its set-top boxes, to distribute software updates, and to transmit the Protected Channels. (*Id.*) DISH requests that VeriSign, GoDaddy.com, and

---

[9] DISH explains that "OVH's servers are continuing to host the infringing transmissions of the Protected Channels, in addition to providing software updates giving Defendant the ability to redirect the Spider-TV set-top boxes to different domains and servers used in the course of retransmitting the Protected Channels." (ECF No. 41 at 3.)

[10] The proposed injunction that DISH attached to its supplemental brief (ECF No. 41-3) includes the following additional OVH IP addresses: 51.89.6.99 and 167.114.211. (ECF No. 41 at 4.)

[11] VeriSign "is the exclusive operator of both the .com and .net top-level domains. It operates the .com registry, selling domain names to registrars who in turn sell those names to end users." *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 295 (4th Cir. 2017).

Name.com be ordered to disable the domains associated with the Service so that they are inaccessible to the public, transfer the domain names to DISH (including changing the registrar of record to the registrar selected by DISH, at DISH's reasonable expense), and reenable the domain names once they have been transferred to DISH and are under DISH's full control. Ordering VeriSign, GoDaddy.com, and Name.com to take these actions would "at least temporarily prevent Defendant from distributing the Protected Channels" and using the domains to sell the Spider-TV set-top boxes. (*Id.*) In support of its request, DISH cites to other cases where courts have ordered registries and registrars to disable and transfer infringing domains to copyright and trademark owners. (*Id.* at 19-20; ECF No. 41 at 3-4.)

DISH has provided notice to VeriSign, GoDaddy.com, and Name.com of its request that the entities be ordered to disable the Service's domains and transfer them to DISH. (*See* ECF No. 41-1 at 7, 8, 20.) VeriSign, GoDaddy.com, and Name.com have not objected to such an order. (*See* ECF No. 41 at 2.)

Hasweh uses the domains registered with VeriSign, GoDaddy.com, and Name.com to conduct his infringing activities. Without these domains, his ability to transmit the Protected Channels will be hindered. Under similar circumstances, other courts have concluded that nonparty domain name registries and registrars may be enjoined under Rule 65(d)(2)(C). *See TVB Holdings (USA), Inc.*, 2018 WL 7076022, at *8 (enjoining nonparty domain name registries and registrars from furthering a defendant's infringing activities and ordering the nonparties to disable the relevant domain names and transfer the domains to the plaintiffs); *N. Face Apparel Corp. v. Fujian Sharing Imp. & Exp. LTD. Co.*, No. 10-1630 (AKH), 2011 WL 12908845, at *3 (S.D.N.Y. June 24, 2011) (concluding that a nonparty domain registry was bound by the court's injunction). (*See also* ECF No. 41 at 3-4.) I find that VeriSign, GoDaddy.com, and Name.com

18

may properly be bound by an injunction under Rule 65(d)(2)(C) because they are "in active concert or participation" with Hasweh's infringing activities.

Because disabling the domains and transferring them to DISH will restrain Hasweh's ability to continue to infringe DISH's copyrights through the Service, and given the lack of any objection by VeriSign, GoDaddy.com, and Name.com, I recommend that VeriSign, GoDaddy.com, and Name.com be ordered to disable the domains and transfer them to DISH, as requested in DISH's proposed injunction (ECF No. 41-3.)

### III. CONCLUSION

In sum, I recommend that the Court:

1. Grant the Motion for Default Judgment Against Tareq Hasweh (ECF No. 35) filed by Plaintiff DISH Network L.L.C.;

2. Enter judgment in favor of Plaintiff DISH Network L.L.C. against Tareq Hasweh in the amount of $1,200,000, for statutory damages, with interest to accrue at the statutory rate, 28 U.S.C. § 1961(a); and

3. Permanently enjoin Tareq Hasweh from continuing to infringe DISH's copyrighted works and permanently enjoin the nonparties (OVH SAS, OVH GmbH, OVH Hosting Inc., VeriSign, GoDaddy.com, and Name.com) from providing the services that allow Tareq Hasweh to engage in his infringing activities, as provided in DISH's proposed Final Judgment and Permanent Injunction[12] (ECF No. 41-3).

I also direct the Clerk to mail a copy of this Report and Recommendation to Defendant Tareq Hasweh.

---

[12] There is a minor typo in the second sentence of paragraph 5 of the proposed order (ECF No. 41-3 at 3.). The sentence should read as follows: "This includes but is not limited **to** terminating. . . .") (emphasis added).

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

June 17, 2019  
Date

/s/  
Timothy J. Sullivan  
United States Magistrate Judge